IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| HIGHWAY COMMERCIAL SERVICES, INC. )<br>HIGHWAY COMMERCIAL SERVICES, INC. )<br>1250 Walcutt Road )<br>Columbus, Ohio 43228 )<br>)<br>         Plaintiff )<br>)<br>  -v- )<br>)<br>)<br>)<br>MIDWEST TRAILER REPAIR, INC. )<br>1900 West 43rd Street )<br>Chicago, Illinois 60609 )<br>)<br>         Defendants ) | FILED: JUNE 16, 2008<br>   08CV3445<br>   JUDGE GUZMAN<br>   MAGISTRATE JUDGE MASON<br>   NF<br><br>**Case No.** |

## COMPLAINT

**NOW COMES** the Plaintiff, Highway Commercial Services, Inc., an Ohio Corporation, by and through legal counsel, and for its Complaint against the Defendants, states as follows:

### GENERAL AND JURISDICTIONAL ALLEGATIONS

1. Plaintiff, Highway Commercial Services, Inc. ("Highway"), is an Ohio Corporation, with its principal place of business located in Columbus, Franklin County, Ohio. Plaintiff engages in the business of leasing tractors and trailers.

2. Defendant, Midwest trailer Repair, Inc. ("Midwest"), is an Illinois Corporation with its principal place of business located in Chicago, Cook County, Illinois.

3. This Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. 1332. There is complete diversity between the parties, and the amount in controversy exceeds $75,000.

1

4. Venue is proper in this Court because this is the judicial district in "which a substantial part of the events or omissions giving rise to the claim occurred." See 28 U.S.C. 1391(a).

5. In December 2005, Plaintiff and Defendant entered into an agreement whereby Plaintiff wire-transferred to the account of the Defendant, the sum of ONE HUNDRED SIXTY THOUSAND FIVE HUNDRED TWENTY DOLLARS ($160,520.00), and in April 2006, Highway wire-transferred to the account of Midwest the sum of ONE HUNDRED SIXTY THOUSAND FIVE HUNDRED TWENTY DOLLARS ($160,520.00) for the purchase of seventeen (17) trailers. In exchange for theses payments, and other consideration, the agreement provided that Midwest would title the seventeen (17) trailers in the name of Highway.

6. On or about September 30, 2005, Plaintiff, Highway Commercial Services, Inc., entered into a Master Vehicle Lease Agreement with Michael Zitis ("Zitis"), pursuant to the terms of which Plaintiff agreed to lease to Zitis, and Zitis agreed to lease and hire from Plaintiff, the tractors and trailers specified on Lease Schedule "A." A copy of the Vehicle Lease Agreement is attached hereto as Exhibit "A" and hereby made a part hereof.

7. Pursuant to the Vehicle Lease Agreement attached hereto as Exhibit "A," Michael Zitis, leased from Plaintiff, Highway Commercial Services, Inc., the seventeen (17) trailers that Highway Commercial Services, Inc. purchased from Midwest Trailer Repair, Inc. Copies of Lease Schedules "A" are attached hereto as Exhibits "B" and "C," and hereby made a part hereof.

8.  In contravention and total disregard of the agreement between Plaintiff and Defendant, Midwest Trailer Repair, Inc., released the titles to the seventeen (17) trailers to Michael Zitis, or to Freight Star Landlines, Inc.  Plaintiff has demanded that the Defendant, Midwest Trailer Repair, Inc. deliver to the Plaintiff the titles to the seventeen (17) trailers, showing Plaintiff, Highway Commercial Services, Inc., as the owner of the seventeen (17) trailers, but Defendant has failed and refused to deliver such titles to the Plaintiff.

## COUNT ONE  -  BREACH OF FIDUCIARY DUTY

9.  Plaintiff incorporates herein as though fully rewritten, the allegations contained in Paragraphs 1 through 8 hereof.

10.  Plaintiff, Highway Commercial Services, Inc., paid the Defendant, Midwest Trailer Repair, Inc., the Purchase Price for the seventeen (17) trailers, and directed the Defendant to title the seventeen (17) trailers in the name of Highway Commercial Services, Inc., as the owner.

11.  Defendant, Midwest Trailer Repair, Inc., accepted the Purchase Price for the seventeen (17) trailers, and failed to follow Plaintiff's instructions to title the seventeen (17) trailers in the name of Plaintiff, Highway Commercial Services, Inc.

12.  Defendant Midwest at all relevant times was the agent of Plaintiff in the purchase of the trailers.   Defendant owed a fiduciary duty to the Plaintiff to ensure that title to the seventeen (17) trailers was placed in the name of Plaintiff, Highway Commercial Services, Inc.

13.  Defendant, Midwest Trailer Repair, Inc., breached its fiduciary duty insofar

as it failed to follow the instructions of Plaintiff, and delivered the titles to the seventeen (17) trailers to the Defendant, Michael Zitis, or to the Defendant, Freight Star Landlines, Inc.

14. As a direct and proximate result of the breach of its duty owed to Plaintiff by Defendant, Midwest Trailer Repair, Inc., Plaintiff has been damaged in an amount in excess of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00), which damages will be proven at the Trial of this matter.

### COUNT TWO  -   BREACH OF CONTRACT

15. Plaintiff incorporates herein as though fully rewritten, the allegations contained in Paragraphs 1 through 14 hereof.

16. Defendant, Midwest Trailer Repair, Inc., breached the terms of the agreement it entered into with the Plaintiff by failing to title the seventeen (17) trailers in the name of Highway Commercial Services, Inc. after accepting the Purchase Price for the seventeen (17) trailers.

17. Plaintiff performed it obligations under the contract.

18. As a direct and proximate result of Defendant's breach of contract, Plaintiff has been damaged in an amount in excess of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00), which damages will be proven at the Trial of this matter.

### COUNT THREE  -   BREACH OF DUTY BY BAILEE

19. Plaintiff incorporates herein as though fully rewritten, the allegations contained in Paragraphs 1 through 18 hereof.

20.     By virtue of its acceptance of the responsibility of titling the seventeen (17) trailers in the Plaintiff's name, a duty in bailment arose on the part of the Defendant as Bailee.

21.     A Bailee has the duty to exercise ordinary care and a duty to exercise the skill or knowledge pertaining to the nature of the business.

22.     The Defendant breached its duty to exercise such skill or knowledge when it failed to properly title the seventeen (17) trailers in Plaintiff's name.

23.     As a direct and proximate result of Defendant's breach of this duty, Plaintiff has been damaged in an amount in excess of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00), which damages will be proven at the Trial of this matter.

WHEREFORE, Plaintiff, Highway Commercial Services, Inc., demands judgment against the Defendant, Midwest Trailer Repair, Inc., in an amount in excess of one hundred fifty thousand dollars ($150,000.00); interest; reasonable legal fees; the costs of this action; and for such other and further relief as this Court deems to be fair and equitable.

Respectfully Submitted,

Law Offices of David T. Grisamore

/S/

David T. Grisamore, Esq.

53 W Jackson Boulevard, Suite 1643
Chicago IL 60604
Telephone:   (312) 913-3448
Facsimile:    (312) 913-3458
E-mail:        dgriz67@sbcglobal.net

5

# VEHICLE LEASE AGREEMENT

This Lease Agreement (the "Lease") is made and entered into on this 30th day of September, 2005, by and between the following parties:

LESSOR:

Highway Commercial Services, Inc.
1250 Walcutt Road
Columbus, Ohio 43228

Telephone:  (614) 851-0005

LESSEE:

Michael Zitis
7127 Barry St.
Rosemont, IL  60018

(847) 8993593

_____
[Jurisdiction of Organization]

_____
[State Organizational ID Number]

  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
_____
[ Federal EIN or Social Security Number]

1. **Vehicle(s).** Lessor hereby agrees to lease to Lessee and Lessee agrees to lease and hire from Lessor the vehicle(s) specified in each schedule of vehicle description and Lease terms as shown on Schedule "A" now or hereafter executed pursuant to this Lease (hereinafter referred to as the "Schedule" or the "Schedules"), together with any attachments or accessories now or hereafter incorporated in or attached to said vehicle(s). When used in this Lease Agreement, the term "vehicle" shall mean a motor vehicle leased hereunder with all such equipment.

    It is hereby agreed that additional vehicle(s) may be leased hereunder by the execution by Lessor and Lessee of additional Schedules, which Schedules, when so executed, shall constitute a separate lease of the vehicle(s) described therein. Except as specifically modified with respect to a vehicle or vehicles by appropriate Schedule identifying such vehicle(s), all of the terms and conditions of this Lease shall govern the rights and obligations of Lessee and Lessor with respect to the vehicle(s) described therein. Whenever reference is made herein to "this Lease" or "the Lease" it shall be deemed to include all Schedules now or hereafter executed under this Lease.

2. **Purposes.** Lessee represents that this Lease is for business and commercial purposes only, and the use of the vehicle(s) leased hereunder is not primarily for personal, family, or household purposes.

3. **Term.** The Term of this Lease in relation to each vehicle shall be for the period appearing on Schedule "A," commencing on the delivery date of each such vehicle and


EXHIBIT A

continuing until all rental payments as hereinafter described, and all of the Lessee's other obligations hereunder, have been satisfied in full by Lessee. The delivery date of any vehicle shall be the earlier of the date such vehicle is delivered to Lessee as shown on the delivery receipt, or five (5) days from the date Lessee is notified that the vehicle is ready for delivery.

4. **Rent.** Lessee agrees to pay Lessor monthly rental payments in the amounts and for the Terms set forth on Schedule "A" applicable to each such vehicle. Each rental payment shall be made without reduction or set-off for any reason, except as otherwise provided in this Lease. Lessor reserves the right to revise the monthly rental payments to reflect any price or specification changes made by the manufacturer of the vehicle(s), accessories, and optional equipment that are placed in service after such charge.

[LESSEE EXPRESSLY UNDERSTANDS AND AGREES THAT IN THE EVENT THAT THE CURRENT PROVISIONS CONTAINED IN THE INTERNAL REVENUE CODE AND THE REGULATIONS ADOPTED THEREUNDER ARE MODIFIED, ALTERED, REVOKED, OR SUPPLEMENTED DURING THE TERM OF THE LEASE, THE RESULTS OF WHICH WOULD BE TO REDUCE OR DISALLOW ACCELERATED DEPRECIATION OR OTHER TAX BENEFITS PRESENTLY AVAILABLE TO LESSOR, LESSEE'S MONTHLY RENTAL PAYMENTS WILL BE INCREASED BY THE AMOUNTS NECESSARY TO COMPENSATE LESSOR FOR SUCH LOST TAX BENEFITS.]

5. **Late Charges; Dishonored Checks.** In the event Lessee fails to pay in full any rental payments, or any other sums required to be paid by Lessee hereunder, within five (5) days after the date such payment or sum is due, Lessor may, without declaring Lessee to be in default, charge Lessee an amount equal to five percent (5.0%) of such past due amounts, or the maximum amount allowable by applicable state law. In addition, Lessor may collect from Lessee a fee for dishonored checks in the amount of any bank charges assessed against Lessor, not less than $35.00, or the maximum amount permitted by applicable law. The imposition of such a charge or fee by Lessor shall in no way limit or alter Lessor's right to additionally or subsequently declare Lessee to be in default and to seek any other remedies available to it under this Lease or by operation of law.

In the event any check presented by Lessee to Lessor is dishonored for any reason, then Lessor shall have the immediate right to re-present any such check(s) electronically, through the Automatic Clearing House. Lessee hearby authorizes Lessor to re-present any dishonored check(s) for payment through the Automatic Clearing House, and authorizes Lessor to debit Lessee's bank account, and credit Lessor's bank account for the full amount of any dishonored check(s), together with the amount of any bank fees and charges.

6. **Fees and Taxes.** Lessee agrees to pay when due all fees, federal, state, and local taxes, assessments, and other charges of whatsoever nature (other than federal, state, or local taxes levied on the net income of Lessor) levied, assessed, imposed, or based upon the rental, use, possession, leasing, operation, control, maintenance, ownership, purchase, or

sale of the vehicle(s), whether or not paid or payable by Lessor, including, without limitation, titling and registration of the vehicle(s) in all jurisdictions, sales and use taxes, duties, assessments, highway use taxes, or other taxes and charges, however designated. In the event any of said fees, taxes, governmental assessments, and charges shall have been paid by Lessor, or if Lessor is required to collect or pay any thereof, Lessee shall reimburse Lessor therefor, upon demand, together with Lessee's next monthly rental payment.

7. Insurance. With respect to the vehicle(s) leased hereunder, Lessee shall provide and maintain, at its expense, public liability insurance/commercial vehicle insurance for bodily injury or death and property damage, with an aggregate limit of not less than $1,000,000.00 single limit coverage, or such higher limit as may be required by law, or the Schedules.

Lessee shall also provide and maintain, at its own expense, collision and upset insurance with a deductible of not more than $1,000.00, and fire, theft, and combined additional coverage with a deductible of not more than $1,000.00 for the full replacement value of the vehicle(s).

All insurance required herein shall protect Lessor and Lessee as their interests may appear. All insurance required to be provided by Lessee shall designate Lessor as an additional insured and LOSS PAYEE and shall, by the terms of the policies or appropriate endorsements thereto: (a) be primary to, and in no respect excess or contributory to or contingent upon, any liability insurance provided by Lessor; (b) waive any right of subrogation against Lessor; (c) provide that all liability insurance shall first be applied against any claim against Lessor; (d) provide that all insurance proceeds are to be paid directly to Lessor in respect of any damage to the vehicle(s); and (e) provide that coverage may not be changed, altered, or canceled by the issuing insurance company without thirty (30) days prior written notice to Lessor.

All insurance required herein to be provided by Lessee shall be placed with an insurance company acceptable to and approved by Lessor. Lessor shall be provided with Certificates of Insurance (or other documents acceptable to Lessor) evidencing the insurance coverage required herein and establishing that such insurance is in effect with respect to the vehicle(s) leased hereunder.

Lessor is hereby appointed as Lessee's attorney-in-fact to prepare and submit any notice or proof of loss and to endorse any check which may be payable to Lessee in order to collect the benefits of such insurance. In addition, as Lessee's attorney-in-fact, Lessor or its assignee shall have full power to (a) determine, in Lessor's discretion, what is a reasonable sum for settlement and/or compromise of a claim or suit; and (b) institute suit in Lessee's name, or in Lessor's name, or both, and to add any costs or expenses relating to the suit or claim, including legal fees and expenses, to the balance of Lessee's obligation under the Lease. This authorization shall include the right of Lessor to cancel the insurance if Lessee is in default hereunder. Lessee agrees that if any charge for required insurance is returned to Lessor, it may be credited to Lessee's account or used to purchase similar insurance or insurance which covers only Lessor's interest in the

vehicle(s). Lessee hereby directs any insurance company to make payment of any monies, payable because of insurance provided pursuant to this Lease, directly to Lessor, and any such monies so paid are hereby assigned to Lessor to be credited to Lessee's account to the extent of the unpaid balance under this Lease.

Lessee agrees that any excess or umbrella liability insurance which it may have in addition to the minimum requirements set forth above shall also include the interest of Lessor, to the extent permitted by law.

8. **Loss and Damage.** Lessee hereby assumes the risk of loss, including theft or destruction, and the risk of damage to the vehicle(s) leased hereunder, from any and every cause whatsoever, whether or not such loss is covered by insurance, from the delivery date of each vehicle. Loss or damage to the vehicle(s), or any part thereof, shall not relieve Lessee of any obligation under this Lease.

If the vehicle(s) is/are damaged or destroyed in an accident or other occurrence or confiscated by any governmental authority or is stolen, abandoned, or subjected to undue perils, Lessee will notify Lessor within ten (10) days of such occurrence or condition. Lessor shall have no obligation to repair or replace any such vehicle.

If the vehicle(s) is/are damaged and in a condition which Lessor believes may be reasonably repaired, Lessee shall repair the same to good working order and condition. If the vehicle(s) is/are damaged and in a condition which Lessor believes is beyond reasonable repair, or with respect to any other occurrence or condition set forth above, Lessor may immediately terminate this Lease with respect to that vehicle. If the Lease is terminated, Lessee's termination liability shall be the amount equal to the sum of the following: (a) any rental payments or other amounts due and owing as of the date of termination; plus (b) the present value of the stream of rental payments to full term; plus (c) the Residual Value as set forth in the Schedule(s); plus (d) an amount equal to one (1) monthly rental payment; plus (e) any and all commissions, fees, or other amounts received by Lessor's assignee as consideration for the assignment of this Lease, less the proceeds Lessor receives from the insurance policy provided by Lessee, if any. Lessee expressly understands and agrees that in the event of a total loss, Lessee's insurance policy may not be sufficient to completely satisfy Lessee's termination liability set forth above, and Lessee agrees that in such event Lessee shall be liable for, and shall pay Lessor upon demand, the amount of any such deficiency.

9. **Lessor's Right to Pay.** If Lessee fails to insure the vehicle(s) as provided by Section 7, or if Lessee fails to pay and discharge any or all fees, taxes, liens, and other charges as required by Section 6, Lessor, without prejudice to any other rights hereunder, may (but shall not be obligated to) provide such insurance, or may pay and discharge such fees, taxes, liens, and other charges, and Lessee agrees to repay said amounts to Lessor immediately upon demand. If Lessee fails to repay Lessor within ten (10) days after the mailing of Lessor's demand for repayment, Lessor may assess a late charge on such amounts in accordance with Section 5 hereof. If such amount, including late charges, remain unpaid for ten (10) additional days, then Lessee shall also be liable for interest

thereon at the default rate of interest set forth in Section 15, or the maximum rate of interest permitted by law.

10. **Indemnification.** Lessee assumes liability for and agrees to defend, indemnify, and hold harmless Lessor, its parent, subsidiary, and affiliated companies and its and their officers and employees, from and against any claim, action, or cause of action (including, without limitation, claims involving strict liability in tort or product liability), liability, loss, cost, expense, or damage of every nature whatsoever (including, without limitation, fines, forfeiture, penalties, settlements, and attorneys' fees) by or to any person or property and regardless of its basis which directly or indirectly arises out of or in connection with or results from or pertains to the purchase, sale, leasing, manufacture, delivery, ownership, use, possession, operation, condition (including, without limitation, latent or other defects, whether or not discoverable, and patent, trademark, and copyright infringement), removal, return, or storage of the vehicle(s), the breach by Lessee of any covenant or condition of this Lease, or the recovery of claims under insurance policies thereon or claims for any interruption of service or loss of business or anticipatory profits, or consequential damages. Lessor shall have no responsibility or liability to Lessee, its successors and assigns, or any other person with respect to any of the claims for which Lessee is providing indemnification hereunder.

    **LESSEE'S INDEMNITIES AND LIABILITIES SHALL CONTINUE IN FULL FORCE AND EFFECT, NOTWITHSTANDING THE EXPIRATION OF TERMINATION OF THIS LEASE FOR ANY REASON.**

    Upon request by Lessor, Lessee shall assume, at its sole cost and expense, the defense of all demands, claims, actions, suits, and all other proceedings against Lessor for which indemnity is provided herein and shall allow Lessor to participate in the defense thereof. Lessee shall be subrogated to all rights of Lessor for any matter for which Lessee has assumed obligation hereunder and may not settle such demand, claim, or action without Lessor's prior written consent. Lessor shall be subrogated to all rights of Lessee for any matter for which Lessor has assumed obligation hereunder and may settle such demand, claim, or action without Lessee's prior consent.

11. **Assignment.** All right, title, and interest in and to this Lease, as well as in and to the vehicle(s) leased hereunder, may be assigned at any time by Lessor without Lessee's consent. Upon notice of any such assignment by Lessor or its assignee, Lessee shall make all payments coming due hereunder to the assignee without offset, counterclaim, or defense of any kind. It is expressly understood that any reference in this Lease to "Lessor" shall be construed to mean Lessor or Lessor's assignee.

    Lessee shall not assign, transfer, or sublet this Lease, the vehicle(s) leased hereunder, or Lessee's interest hereunder, without Lessor's prior written consent (which consent may be withheld in Lessor's sole discretion), nor shall Lessee's interest hereunder inure to the benefit of any trustee, receiver, creditor, or successor of Lessee or Lessee's property, whether or not in bankruptcy, and whether by operation of law or otherwise.

12. **Ownership/Title.** Lessor and Lessee intend for this agreement to be an agreement of lease only; consequently, ownership of and title to all vehicle(s) shall be and remain in Lessor, notwithstanding possession and use thereof by Lessee. Lessee has not acquired, and will not acquire, by its acceptance of this Lease and the delivery of the vehicle(s), any legal or equitable interest in the vehicle(s) but shall merely have the possessory right to use and operate the vehicle(s) during the Term of this Lease. Lessee acknowledges that unless and until Lessor allows Lessee to purchase the vehicle(s) pursuant to Section 17 hereof, Lessee's interest shall be that of lessee and not owner. Lessee shall keep the vehicle(s) free and clear from all liens and encumbrances during the Term of this Lease.

To the extent that the vehicle(s) leased hereunder is or might be deemed to be Goods or Inventory under Revised Article 9 of the Uniform Commercial Code, and in order to provide creditors with notice of Lessor's ownership of and title to the vehicle(s), Lessee hereby grants to the Lessor a security interest in, and agrees and acknowledges that Lessor has and shall continue to have a security interest in, all of the following property, whether now leased to, owned by, or hereafter acquired by the Lessee, and wheresoever situated (a) all of the vehicle(s) leased to, owned by, or hereafter attached hereto; (b) all additions, parts, accessories, attachments, and accessions to the vehicle(s) described in subpart (a) hereof; (c) all Proceeds of any of the property described in subparts (a) and (b) in whatever form; (d) all policies of insurance on the foregoing property and the Proceeds of insurance; and (e) all Proceeds and products of the foregoing, all to secure the payment of any and all rental payments and any other amounts that may now or hereafter be or become due and owing to the Lessor.

13. **Use, Inspection, and Alterations.** Lessee, at its sole expense, shall have the vehicle(s) serviced in accordance with the manufacturer's approved maintenance schedules, ensure that maintenance records are available for review by Lessor at reasonable times and places, and maintain the vehicle(s) in good repair, appearance, functional order, and good and lawful operating condition.

Lessee shall not: (a) use or permit the use of the vehicle(s) in any unintended, injurious, or unlawful manner; (b) use or permit the use of the vehicle(s) primarily for personal, family, household, or agricultural purposes, or for the transportation of passengers; (c) use or permit the use of any vehicle in violation of any federal, state, or municipal statutes, laws, ordinances, rules, or regulations, or contrary to the provision of any applicable insurance policy; (d) use or permit the use of the vehicle for the transportation of passengers or for the transportation of materials designated as flammable, explosive, radioactive, extra-hazardous, or "hazardous substances," or "hazardous materials" under any federal, state, or local environmental laws; (e) subject the vehicle(s) to unusual, extreme, or severe operating condition; or (f) change or alter the vehicle(s) without Lessor's prior written consent, except that Lessee shall make such alterations and improvements, at Lessee's sole expense, as may be required from time to time to meet the requirements of law or of any federal, state, or local governmental authority having jurisdiction over the vehicle(s).

To ensure compliance with the foregoing, Lessor shall have the right, at any time, to enter Lessee's premises or elsewhere to inspect the vehicle(s) or to observe its use. All

improvements and alterations, other than improvements which can be readily removed without causing any damage to the vehicle and without rendering the vehicle unable to comply with law, shall become part of the vehicle and shall be the property of the Lessor, and shall not be removed by Lessee.

Lessee shall immediately notify Lessor of any and all accidents involving any vehicle. Such notice shall be by telephone and in writing and shall include full details of the accident and the names and addresses of all parties and witnesses. Lessee shall keep Lessor and the insurer fully informed of all claims, suits, or proceedings arising out of any accident involving a vehicle.

14. **Special Representations, Warranties, and Covenants of Lessee.** Lessee represents, warrants, and covenants to Lessor that: (a) the vehicle(s) will not be used outside of the United States without the prior written consent of Lessor; (b) Lessee is not and will not become an organization exempt from the tax imposed by Chapter 1 of the Internal Revenue Code of 1986, nor will Lessee allow any such entity to use the vehicle(s); and (c) Lessee is not the United States, any State (including the District of Columbia), or a political subdivision thereof, or any agency or instrumentality of the United States, any State, or political subdivision thereof, or any international organization, nor will Lessee allow any such entity to use the vehicle(s). Lessee acknowledges that if any representation, warranty, or covenant contained herein is false or if it takes any action or omits to take any action which causes any such representation, warranty, or covenant to be false or misleading or to be breached, Lessor, or the affiliate group of which it is a member, may suffer adverse tax consequences. Accordingly, Lessee agrees that if it breaches any such representation, warranty, or covenant, or if the same shall be or become false, this Lease shall be deemed to be in default and Lessee shall be liable to Lessor in the manner and for the amount specified in Section 15 hereof.

15. **Default; Lessor's Remedies.** Time is of the essence in this Lease, and Lessor may declare this Lease to be in default and terminated upon the occurrence of any of the following events: (a) Lessee's failure to pay when due the full amount of any rental or other payment required hereunder or under any other lease (or under any loan or retail installment contract) with Lessor or any other person, including, without limitation, rent, taxes, liens, insurance, indemnification, repair, or other charge, or Lessee's failure to perform any other obligation, agreement, covenant, or affirmation hereunder or thereunder; or (b) any of Lessee's warranties or representations shall be or become untrue; or (c) the making of any false or misleading statement by Lessee prior to or in connection with this Lease; or (d) Lessee's death, dissolution, insolvency, or other termination of existence; or (e) Lessee's becoming the subject of a petition in bankruptcy, either voluntarily or involuntarily, or in making an assignment for the benefit of creditors, or being named or subjected to a suit for the appointment of a receiver; or (f) seizure of or levy upon the vehicle(s) leased hereunder by reason of any legal or governmental process directed against Lessee; or (g) any bankruptcy, insolvency, termination, or default of any guarantor of Lessee; or (h) if any guaranty supporting Lessee's obligations hereunder shall fail to remain in full force and effect; or (i) Lessor in good faith believes that the prospect for performance or payment by Lessee is substantially impaired; or (j) a transfer

or assignment, whether voluntary or involuntary, is made that is prohibited by Section 11 of this Lease. Upon Lessee's default, Lessee shall be liable for, and shall pay Lessor upon demand, the sum of the following as liquidated damages, which the parties stipulate is reasonable in light of the then anticipated harm caused by Lessee's default: (a) any rental payments or other amounts due and owing as of the time of default; plus (b) the present value, as of the same date, of the total rental payments for the then remaining term of the Lease; plus (c) the Residual Value as set forth in the Schedule(s) (less a deduction for the time value of such payment); plus (d) an amount equal to one (1) monthly rental payment; plus (e) any and all commissions, charges, fees, expenses, or other amounts paid by Lessor or Lessor's assignee as consideration for the assignment of this Lease (collectively the "Default Liability").

In the event of Lessee's default, Lessee agrees to surrender the vehicle(s) to Lessor at such location as Lessor may designate, and agrees that Lessor may take possession of the vehicle(s) wherever the same may be found, whether on Lessee's premises or elsewhere, with or without notice, in accordance with applicable law. If Lessor retakes possession of the vehicle(s) and at the time it obtains possession there shall be in, upon, or attached to the vehicle(s) any property, goods, or things of value belonging to Lessee or in the custody or control of Lessee, Lessor is hereby authorized to take possession of such property, goods, and things of value and hold the same for Lessee or to place such property, goods, or things of value in public storage for the account of and at the expense of Lessee. Lessee further agrees that any and all rights or interest Lessee may have in the vehicle(s) shall be extinguished upon Lessee's default.

If Lessor obtains possession of the vehicle(s) following Lessee's default, Lessor may, but shall not be obligated to, dispose of the vehicle(s) by public or private sale in the wholesale or retail market, and such disposition may be with or without notice to Lessee or, if Lessor so elects in its sole discretion, Lessor may relet any one or more of the vehicle(s). In the event of a public or private sale or reletting, Lessor shall deduct from the Default Liability the amount of any proceeds obtained upon disposition of the vehicle(s) at wholesale less any costs or expenses incurred by Lessor in connection with the repossession, storage, restoration, and/or disposition or reletting of the vehicle(s).

Lessor may assess, and Lessee will be liable for, interest on the total amount Lessee may owe to the Lessor from time to time by reason of Lessee's default at the rate of eighteen percent (18.0%) per annum, unless a lower rate is required by applicable law, in which case that rate shall apply, both before and after judgment.

If this Lease is assigned to any person or entity pursuant to the provisions of the Bankruptcy Code, any and all monies or other consideration payable or otherwise to be delivered in connection with such assignment, shall be paid or delivered to Lessor, shall be and remain the exclusive property of Lessor, and shall not constitute property of the Lessee or of the estate of the Lessee.

Lessee understands and agrees that the remedies provided under this Lease in favor of Lessor upon default shall not be exclusive, but shall be cumulative and in addition to any other remedies available to Lessor, whether existing in law, equity, or bankruptcy.

16. **Security Deposit.** Any security deposit made by Lessee hereunder shall be returned to lessee, without interest, upon the expiration of the term of the Lease; provided, however, that in the event of a default by Lessee hereunder the security deposit shall be retained by Lessor as additional liquidated damages and shall not be applied to reduce the obligations or liabilities of Lessee to Lessor elsewhere provided for in this Lease.

17. **Purchase Option.** It is understood and agreed that Lessee has no option to purchase the vehicle(s) at any time; however, the Lessor may, in its sole discretion, provide Lessee with the opportunity to purchase the vehicle(s) upon the expiration of the Lease for an amount equal to the Residual Value set forth in the Schedule(s). If Lessee elects to accept Lessor's offer and purchase the vehicle(s), then Lessee must also pay any official fees and taxes assessed in connection with the purchase, plus any other amounts due hereunder but not paid at the time of termination. Lessee expressly understands that Lessee shall have absolutely no equity or other ownership rights in the vehicle(s) unless and until Lessee purchases the vehicle(s) pursuant to this Section 17.

18. **Lease Termination Liability.** Upon the expiration of this Lease, unless Lessor provides Lessee with a purchase option pursuant to Section 17 that Lessee exercises, Lessee shall, at Lessee's expense, assemble and return the vehicle(s) leased hereunder, unencumbered, at Lessor's place of business, or at such other place as Lessor specifies, in the same condition, appearance, and functional order as received, reasonable and ordinary wear and tear alone excepted.

    Upon the return of the vehicle(s) as herein provided, Lessor will sell the vehicle(s) at public or private sale, with or without notice to Lessee. If the amount received from the sale, at wholesale (less sales tax payable, reasonable sales commissions, and restoration and storage costs, if any) exceeds the Residual Value of the vehicle(s) set forth in the Schedule(s), the amount of such surplus shall be paid to Lessee. If the amount received from the sale, at wholesale (less sales tax payable, reasonable sales commissions, and restoration and storage costs, if any) is less than the Residual Value of the vehicle(s) set forth in the Schedule(s), Lessee shall be liable for, and shall pay upon demand, the amount of such deficiency to Lessor. Lessee acknowledges that the potential benefit or liability contemplated by this Section 18 is not intended to create any equity interest in the vehicle(s) for Lessee, but rather is designed as an incentive for Lessee to properly maintain the vehicle(s) as required by this Lease.

19. **Additional Security.** In the event that Lessor deems itself to be insecure with respect to the performance by Lessee, Lessor may demand, in writing, adequate assurance of due performance and may require additional security to secure the performance of Lessee's obligation to Lessor hereunder.

20. <u>Disclaimer of Warranties</u>. LESSOR IS NOT THE PRODUCER, MANUFACTURER, OR DESIGNER OF THE VEHICLE(S) LEASED HEREUNDER, AND LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THIS LEASE OR THE VEHICLE(S) LEASED HEREUNDER, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR INTENDED USE. LESSEE HAS INSPECTED EACH VEHICLE AND LEASES THE SAME FROM LESSOR "AS IS." LESSOR SPECIFICALLY DISCLAIMS ANY AND ALL LIABILITY FOR INCIDENTAL AND CONSEQUENTIAL DAMAGES.

Lessor agrees, however, to assign to Lessee all of the manufacturer's standard warranties applicable to the vehicle(s) together with any rights and remedies afforded thereunder, to the extent that those warranties, rights, and remedies are assignable.

21. <u>Financing Statements.</u> Lessee hereby authorizes Lessor to file such Financing Statements, with or without the signature of the Lessee, as Lessor may elect, as may be necessary or desirable to perfect the lein of Lessor's security interest in the property described in Section 12 hereof. Lessee shall not change its name or identity in any manner which may make any Financing Statement or Continuation Statement filed in connection with Lessor's security interest seriously misleading within the meaning of Ohio Revised Code 1309.101, et seq. as now or hereafter in effect, unless Lessee shall have delivered to Lessor written notice thereof not less than thirty (30) days before the effective date of such change, and shall have taken all actions which Lessor determines to be reasonably necessary or desirable to amend such Financing Statement or Continuation Statement so that it is not seriously misleading. Lessee will not change its address as set forth on the first page of this Lease unless Lessee shal have given Lessor prior written notice of its intent to do so not less than thirty (30) days in advance of the effective date of such change.

22. <u>Entire Agreement</u>. This Lease and the Schedule(s) referred to herein constitute the entire agreement between the parties hereto. No waiver, modification, or amendment of this Lease or any Schedule shall be effective unless in writing and signed by both of the parties hereto. No forbearance to exercise any right or privilege under this Lease or waiver of any breach of any of its terms shall be construed as a waiver of any of such terms, rights, or privileges, but the same shall continue and remain in full force and effect the same as if no such forbearance or waiver had occurred.

23. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto, the successors and assigns of the Lessor, and the permitted successors and assigns of the Lessee.

24. <u>Costs and Attorneys' Fees</u>. If Lessor employs an agent or other party for purposes of collection or repossession, or refers this Lease to an attorney for purposes of collection, repossession, or enforcement of Lessor's interest herein, Lessee agrees to reimburse

Lessor upon Lessor's demand for all of Lessor's costs, attorneys' fees, and expenses to the extent permitted by applicable law.

25. **Notices.** All notices and payments shall be mailed to the respective parties at the addresses hereinabove indicated, or such other address as a party may provide from time to time in writing.

26. **Governing Law and Jurisdiction.** This Lease shall have been deemed to have been made in the State of Ohio and shall be interpreted, and the rights and liabilities of the parties determined, by the laws of the State of Ohio. Any controversy, claim, or dispute arising out of or relating to this Lease shall be brought only in the Court of Common Pleas, Franklin County, Ohio. LESSEE WAIVES ANY AND ALL RIGHT TO A JURY TRIAL REGARDING ANY DISPUTE ARISING HEREUNDER.

27. **Severability.** If any of the provisions of this Lease are prohibited by or held invalid by any court of appropriate jurisdiction, that provision shall be considered inapplicable and omitted but shall not invalidate the remaining provisions of this Lease.

28. **Headings.** Headings contained herein are solely for the convenience of the parties and shall not be considered when interpreting this Lease.

LESSEE ACCEPTS THE TERMS AND CONDITIONS OF THIS LEASE.

LESSEE:

_____
Michael Zitis
[Print Name]

Date: 9-30-05

LESSOR:

HIGHWAY COMMERCIAL SERVICES, INC.

By: _Lisa Cerner_____
    _Gen Mgr._____
    [Print Name and Title]

Date: 9-30-05

CS.V4. June2005

# HIGHWAY COMMERCIAL SERVICES, INC.

## Lease Schedule "A"

Date: 4/10/2006                                                                                              VML: 9/30/2005

(If no lease date is set forth in the preceding sentence, then the most recent applicable Lease Agreement between Lessor and Lessee shall govern this Schedule A.)

Account #: 31736158
Lessee: Michael Zitis
Address: 7127 Barry Street

County:                                City: Rosemont               State: IL                Zip: 60018-

PROPERTY SCHEDULE:

| Year | Make | Model | VIN | Capitalized Cost | Residual Value | Term in Months |
|---|---|---|---|---|---|---|
| 2005 | Great Dane | Trailer | 1GRAA06265T513419 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Great Dane | Trailer | 1GRAA06245T513421 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Great Dane | Trailer | 1GRAA06265T513422 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Great Dane | Trailer | 1GRAA06225T513420 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Stoughton | Trailer | 1DW1A53295B787807 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Stoughton | Trailer | 1DW1A532X5B787802 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Stoughton | Trailer | 1DW1A53255B755453 | $20,065.00 | $4,120.00 | 48 |
| 2000 | Trailmobile | Trailer | 1PT01JAH9X6009102 | $12,065.00 | $2,460.00 | 48 |
| 1995 | Stoughton | Trailer | 1DW1A5324SS945501 | $8,000.00 | $1,660.00 | 48 |

| CAPITALIZED COST AND MONTHLY PAYMENTS: | | INITIAL AMOUNTS DUE: | |
|---|---|---|---|
| Gross Capitalized Cost | $160,520.00 | Cap Cost Reductions: | $0.00 |
| Cap Cost Reductions | $0.00 | Refundable Security Deposit | $8,000.00 |
| Adjusted Capitalized Cost | $160,520.00 | License/Registration Fees | $0.00 |
| Base Monthly Payment | $3,598.96 | Administrative Fees | $800.00 |
| Deposit Build Up | $520.00 | 1st Payment Amount | $0.00 |
| State/Use Taxes Per Month | $0.00 | State/Use Tax on Initial Amounts | $0.00 |
|   State | $0.00 |   State | $0.00 |
|   Local | $0.00 |   Local | $0.00 |
|   County | $0.00 |   County | $0.00 |
| TOTAL Monthly Lease Payment | $4,118.96 | TOTAL | $8,800.00 |

Rent: Lessee hereby agrees and promises to pay Lessor the total rent of $172,750.08 payable as follows:
One payment of $0.00 on 4/10/2006 and 48 payments of $4,118.96 each commencing on 5/10/2006 and continuing on the same day each month except as follows: N/A

Certificate of Delivery and Acceptance and State and Place of Service:
Lessee hereby certifies to Lessor that on and as of the date described above as "Delivery Date", the Vehicle(s) described herein: (1) is/are tangible personal property; (2) has/have been delivered to and is/are in possession of the Lessee; (3) has/have been inspected by the Lessee; and (4) the vehicle(s) is/are available for use and placed in service by Lessee on the above-described "Delivery Date".

Ratification and Affirmation of Representations, Warranties, and Covenants:
Lessee hereby agrees that its warranties and covenants made in the Lease Agreement are approved, ratified, and affirmed in all respects as of the date of this Lease Schedule and confirms that the representations made in the Lease Agreement are, as of the date of this Lease Schedule, true, accurate, and complete in all respects. The terms and provisions of the Master Lease Agreement are incorporated herein by reference.

Limit on Liability of Lessee:   Lessor agrees that Lessee's liability for any deficiency under Section 18 of the Lease shall not in the aggregate exceed $32,960.00 with respect to the Vehicle(s) listed on this Lease Schedule.

Highway Commercial Services, Inc.                                                 Michael Zitis
(Lessor)                                                                                              (Lessee)

Title: GM                                                                                        Title: Individual

EXHIBIT B

# HIGHWAY COMMERCIAL SERVICES, INC.

## Lease Schedule "A"

Date:　12/20/2005　　　　　　　　　　　　　　　　　　　　　　　　　　VML:　9/30/2005

(If no lease date is set forth in the preceding sentence, then the most recent applicable Lease Agreement between Lessor and Lessee shall govern this Schedule A.)

Account #:　31736102

Lessee:　Michael Zitis

Address:　7127 Barry Street

County:　　　　　　　　　City:　Rosemont　　　　　State:　IL　　　　Zip:　60018-

PROPERTY SCHEDULE:

| Year | Make | Model | VIN | Capitalized Cost | Residual Value | Term in Months |
|---|---|---|---|---|---|---|
| 2005 | Stoughton | Trailer | 1DW1A53235S759145 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Great Dane | Trailer | 1GRAA06205T512041 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Great Dane | Trailer | 1GRAA06225T512039 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Great Dane | Trailer | 1GRAA06295T512040 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Stoughton | Trailer | 1DW1A53215S759144 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Stoughton | Trailer | 1DW1A53205B755456 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Great Dane | Trailer | 1GRAA06205T512038 | $20,065.00 | $4,120.00 | 48 |
| 2005 | Great Dane | Trailer | 1GRAA06295T512037 | $20,065.00 | $4,120.00 | 48 |

| CAPITALIZED COST AND MONTHLY PAYMENTS: | | INITIAL AMOUNTS DUE: | |
|---|---|---|---|
| Gross Capitalized Cost | $160,520.00 | Cap Cost Reductions: | $0.00 |
| Cap Cost Reductions | $0.00 | Refundable Security Deposit | $8,000.00 |
| Adjusted Capitalized Cost | $160,520.00 | License/Registration Fees | $0.00 |
| Base Monthly Payment | $3,598.96 | Administrative Fees | $800.00 |
| Deferred Down Payment | $520.00 | 1st Payment Amount | $0.00 |
| State/Use Taxes Per Month | $0.00 | State/Use Tax on Initial Amounts | $0.00 |
| State | $0.00 | State | $0.00 |
| Local | $0.00 | Local | $0.00 |
| County | $0.00 | County | $0.00 |
| TOTAL Monthly Lease Payment | $4,118.96 | TOTAL | $8,800.00 |

Rent:　Lessee hereby agrees and promises to pay Lessor the total rent of　$172,750.08　payable as follows:
One payment of　$0.00　on　12/20/2005　and　48　payments of　$4,118.96　each commencing on
1/20/2006　and continuing on the same day each month except as follows:　N/A

Certificate of Delivery and Acceptance and State and Place of Service:
　Lessee hereby certifies to Lessor that on and as of the date described above as "Delivery Date", the Vehicle(s) described herein: (1) is/are tangible personal property; (2) has/have been delivered to and is/are in possession of the Lessee; (3) has/have been inspected by the Lessee; and (4) the vehicle(s) is/are available for use and placed in service by Lessee on the above-described "Delivery Date".

Ratification and Affirmation of Representations, Warranties, and Covenants:
　Lessee hereby agrees that its warranties and covenants made in the Lease Agreement are approved, ratified, and affirmed in all respects as of the date of this Lease Schedule and confirms that the representations made in the Lease Agreement are, as of the date of this Lease Schedule, true, accurate, and complete in all respects. The terms and provisions of the Master Lease Agreement are incorporated herein by reference.

Limit on Liability of Lessee:　Lessor agrees that Lessee's liability for any deficiency under Section 18 of the Lease shall not in the aggregate exceed　$32,960.00　with respect to the Vehicle(s) listed on this Lease Schedule.

Highway Commercial Services, Inc.　　　　　　　　　　Michael Zitis
(Lessor)　　　　　　　　　　　　　　　　　　　　　　　　(Lessee)

Title:　GM　　　　　　　　　　　　　　　　　　　　　　Title:　Individual

EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS -  EASTERN DIVISION**

| | |
|---|---|
| HIGHWAY COMMERCIAL SERVICES, INC. <br> 1250 Walcutt Road <br> Columbus, Ohio 43228 <br><br> Plaintiff <br><br> -v- <br><br><br> MIDWEST TRAILER REPAIR, INC. <br> 1900 West 43rd Street <br> Chicago, Illinois 60609 <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**STATEMENT PURSUANT TO LOCAL RULE 3.2 (NOTIFICATION AS TO AFFILIATES)**

**NOW COMES** the Plaintiff, Highway Commercial Services, Inc., an Ohio Corporation, by and through legal counsel, and for its Statement Pursuant to Local Rule 3.2 (Notification as to Affiliates) states that it is not a publicly traded-company and does no have any affiliates.

Law Offices of David T. Grisamore


/S/

David T. Grisamore, Esq.
53 W Jackson Boulevard, Suite 1643
Chicago IL 60604
Telephone:     (312) 913-3448
Facsimile:     (312) 913-3458
E-mail:          dgriz67@sbcglobal.net

1